Kevin D. Sullivan (State Bar No. 270343)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone: 310.556.8861
Facsimile: 310.553.2165
ksullivan@ebglaw.com

Attorneys for Defendant
GRAYBAR ELECTRIC COMPANY, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN SOTO, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GRAYBAR ELECTRIC COMPANY, INC., a New York corporation; ERNESTO ACOSTA, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION BY DEFENDANT GRAYBAR ELECTRIC COMPANY, INC. UNDER 28 U.S.C. §§ 1332(D) [CLASS ACTION FAIRNESS ACT OF 2005]** |

DEFENDANT GRAYBAR ELECTRIC COMPANY, INC.'S NOTICE OF REMOVAL

FIRM:64409376v2

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Graybar Electric Company, Inc. ("Graybar"), contemporaneously with the filing of this notice, is effecting the removal of the above-captioned action, *John Soto v. Graybar Electric Company, Inc., et al.*, case no. 24CECG01252, from the Superior Court of the State of California for the County of Fresno ("State Court Action") to the United States District Court for the Eastern District of California. Jurisdiction is invoked pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, in that the number of members of the proposed plaintiff class in the aggregate is more than 100, Plaintiff John Soto ("Plaintiff") is a citizen of a state different than Graybar, and the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest.

## I.   PLEADINGS, PROCESS AND ORDERS

1.   On March 21, 2024, Plaintiff commenced the above-captioned action in the Superior Court of the State of California, County of Fresno, against Graybar and an individually named defendant – Ernesto Acosta. The action is entitled *John Soto v. Graybar Electric Company, Inc., et al.* and is assigned case no. 37-2024-00005548-CU-OE-CTL. True and correct copies of the original summons and complaint that were served upon Graybar on April 2, 2024 are attached hereto collectively as Exhibit 1.

2.   To the best of Graybar's knowledge, Exhibit 1 constitutes all of the process, pleadings and orders served on Graybar in the State Court Action.

3.   Graybar is not aware of service of process being effectuated on the other named defendant – Mr. Acosta. Nonetheless, actions removed under CAFA "may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

## II.   BASIS FOR REMOVAL

4.   This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to the United States District Court by Graybar pursuant to the provisions of 28 U.S.C. §§ 1332(d), 1441 and 1453 in that it is a purported class action in which there are more than 100 putative class members, it is between citizens of

different states, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

5. CAFA was enacted to expand federal jurisdiction over purported class actions. It provides that a purported class action may be removed in accordance with 28 U.S.C. § 1446 if: (a) membership in the putative class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000.00. 28 U.S.C. §§ 1332(d), 1453(b).

6. As explained more fully below, this Court has original jurisdiction under CAFA over all claims brought by Plaintiffs, on behalf of themselves and all members of the putative class. Because Plaintiff's action could have been filed in this Court, Graybar may remove it pursuant to 28 U.S.C. § 1441.

### A.   Size of the Proposed Class

7. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.

8. "Plaintiff seeks to represent a class of all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint [on March 21, 2024] up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')." Compl., ¶ 26.

9. Graybar has employed approximately 658 non-exempt employees in California since January 15, 2021. Lamkey decl., ¶ 4(a). Accordingly, the putative class has more than 100 members.

### B.   Citizenship

10. CAFA's requirement that any one member of the proposed class be a citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)) is also satisfied here.

11. Plaintiff avers in his complaint that he "is a resident of the State of California. Compl., ¶ 1A. He further alleges that he has "worked for Defendants from approximately March of 2018 through the present date. *Id.*, ¶ 2. All of these facts are indicia of Plaintiff's California

citizenship. *Anderson v. Watts*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary; and a domicile, when acquired, is presumed to continue until it is shown to have changed."); *CarMax Auto Superstores CA LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1091, fn. 38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state"); *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (noting that the factors relevant to domicile determination include residence and place of employment); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) (observing "that the party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change").

12. "In determining whether there is diversity of citizenship between corporate parties, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002) (internal citations omitted).

13. Graybar is a corporation formed under the laws of New York and has its principal place of business in Missouri. Lamkey decl., ¶ 5; RJN, Ex. A.

14. For these reasons, the requirements for diversity jurisdiction are met because Plaintiff and Graybar are citizens of different states.

### C. Amount In Controversy

15. A notice of removal need only provide a "'plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). As the Ninth Circuit has explained, "the amount in controversy is not limited to damages incurred prior to removal." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414 (9th Cir. 2018). "Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414–415.

16. CAFA's requirement that the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, is satisfied here. Although Graybar disputes liability and damages, the damages Plaintiff claims for himself and the putative class exceed $5,000,000.00.

17. When evaluating the amount in controversy, "the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 Fed. Appx. 806, 807 (9th Cir. 2017) (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 648 (9th Cir. 2012)).

18. A removal under CAFA may rely on "a chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). Specifically, in calculating the amount in controversy, an "assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015)); *accord Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.").

19. The putative class consists of at least 658 current and former non-exempt employees of Graybar. Lamkey decl., ¶ 4(a). The average base hourly rate paid to the putative class from March 21, 2020 through April 26, 2024 was $25.87. *Id.* at ¶ 4(b). From March 21, 2020 through April 26, 2024, the putative class collectively worked a total of approximately 373,030 shifts, and their average daily hours worked during this time period was approximately 8.32 hours. *Id.* at ¶ 4(c), (d). From January 15, 2021 through April 26, 2024, the putative class collectively worked a total of approximately 32,964 biweekly pay periods. *Id.* at ¶ 4(e). Approximately 11,384 total wage statements were provided to the putative class from March 21, 2023 through April 26, 2024. *Id.* at ¶ 4(f). There have been approximately 234 putative class members whose employment ended at any time since March 21, 2021. *Id.* at ¶ 4(g). The average base hourly rate paid to these former employees was $24.11, and their average daily hours worked was 8.18 hours. *Id.* at ¶ 4(g)(1), (2).

20. The Complaint seeks damages and penalties for a variety of alleged wage-hour violations for a period commencing on March 21, 2020. Compl., ¶¶ 14–26. Plaintiff alleges that he and the putative class are entitled to recover purportedly unpaid overtime, minimum wages, and meal and rest period premiums, in addition to wage statement penalties, waiting time penalties, statutory and civil penalties, vacation pay, expense reimbursement, restitution, costs, and attorneys' fees. *Id.* at ¶¶ 14–25. Plaintiff also seeks injunctive relief. *Id.* at ¶ 25.

**<u>Overtime</u>**

21. In support of his overtime claim, Plaintiff alleges just about every conceivable basis for alleged overtime violations, contending that "among other things," Graybar had a practice of "failing to accurately track and/or pay for all minutes actually worked at the proper overtime rate of pay; engaging, suffering, or permitting employees to work off the clock, including, without limitation, by requiring Plaintiff and [putative] Class Members: to come early to work and leave late work without being able to clock in for all that time, to suffer under Defendants' control due to long lines for clocking in, to complete pre-shift tasks before clocking in and post-shift tasks after clocking out, to clock out for meal periods and continue working, to clock out for rest periods, to don and doff uniforms and/or safety equipment off the clock, to attend company meetings off the clock, to make phone calls off the clock, to drive off the clock, and/or go through security screenings and/or temperature checks off the clock; failing to include all forms of remuneration, including non-discretionary bonuses, incentive pay, meal allowances, mask allowances, gift cards and other forms of remuneration into the regular rate of pay for the pay periods where overtime was worked and the additional compensation was earned for the purpose of calculating the overtime rate of pay; detrimental rounding of employee time entries, editing and/or manipulation of time entries; and by attempting but failing to properly implement an alternative workweek schedule . . . ." Compl., ¶ 14; *accord id.* at ¶ 40.

22. Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not paid for at least one hour of overtime per week from March 21, 2020 through the present. *Reyes v. Carehouse Healthcare Center, LLC*, No. SACV

16-01159-CJC(MRWx), 2017 WL 2869499, at *3 (C.D. Cal. July 5, 2017) (finding an assumption of one hour of overtime per week to be appropriate when plaintiff alleged "regular" violations).

23.  Even if only slightly more than a three-year time period were taken into account – rather than the four-year lookback period that Plaintiff seeks (i.e., since January 15, 2021 rather than March 21, 2020) – the amount in controversy on this overtime claim alone exceeds $2,550,000.[1]

**Minimum Wage**

24.  Like his overtime time, in support of his minimum wage claim, Plaintiff alleges that Graybar engaged in a pattern of "failing to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage; engaging, suffering, or permitting employees to work off the clock, including, without limitation, by requiring Plaintiff [putative] and Class Members: to come early to work and leave late work without being able to clock in for all that time, to suffer under Defendants' control due to long lines for clocking in, to complete pre-shift tasks before clocking in and post-shift tasks after clocking out, to clock out for meal periods and continue working, to clock out for rest periods, to don and doff uniforms and/or safety equipment off the clock, to attend company meetings off the clock, to make phone calls off the clock; to drive off the clock; detrimental rounding of employee time entries; editing and/or manipulation of time entries to show less hours than actually worked; failing to pay split shift premiums; and failing to pay reporting time pay . . . ." Compl., ¶ 15; *accord id.* at ¶ 46.

25.  Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not paid for at least one hour of overtime per week from March 21, 2020 through the present. *Cabrera v. South Valley Almond Company, LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding an assumption of one hour of one hour of unpaid minimum wages per week to be consistent with "at times" and "on occasion" allegations based on "policies and/or practices").

---

[1] 32,946 biweekly pay periods x 2.0 weeks per pay period x 1.0 hour per week x $25.87 average hourly base rate of pay x 1.5 (to get the overtime rate from the base rate) = $2,556,939.06.

26. The amount of allegedly unpaid minimum wages is doubled since Plaintiff seeks to recover liquidated damages under Labor Code section 1194.2. Compl., ¶ 48; *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995 n.7 (2022) (permitting liquidated damages for minimum wage claim under CAFA removal Even if only slightly more than a three-year time period were taken into account – rather than the four-year lookback period that Plaintiff seeks (i.e., since January 15, 2021 rather than March 21, 2020) – the amount in controversy on this minimum wage claim alone exceeds $975,000.[2]

### Meal Periods

27. In support of his meal period claim, Plaintiff alleges that Graybar "failed to provide Plaintiff and [putative] Class Members, or some of them, full, timely thirty (30) minute uninterrupted meal period for days on which they worked more than five (5) hours in a work day and a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day, and failing to provide compensation for such unprovided meal periods as required by California wage and hour laws." Compl., ¶ 16. Plaintiff further alleges that Graybar required Plaintiff and putative class members "to clock out for meal periods and continue working . . . ." *Id.* at ¶ 15.

28. Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not provided a compliant meal period 60% of the time. *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151–52 (S.D. Cal. 2018) (finding a 60% violation rate assumption to be reasonable where complaint alleged "policy and practice" of meal period violations). However, for purposes of the instant removal, Graybar conservatively assumes only a 20% violation rate. Courts have widely accepted a 20% assumed violation rate for meal period claims. *E.g., Salazar v. PODS Enters, LLC*, No. EDCV 19-260-MWF (KKx), 2019 WL 2023726,

---

[2] 32,946 biweekly pay periods x 2.0 weeks per pay period x 1.0 hour per week x $14.96 (weighted average minimum wage from February 22, 2021 through March 9, 2024) x 2.0 (liquidated damages per Lab. Code § 1194.2) = $985,744.32.
In 2021, the California minimum wage for employers with at least 26 employees was $14.00 per hour. In 2022, that minimum was $15.00 per hour. In 2023, that minimum was $15.50 per hour. And in 2024, that minimum has been $16.00 per hour.

at *2–3 (C.D. Cal. May 8, 2019) (20% violation rate was reasonable where plaintiff alleged that he and putative class members were only "occasionally authorized" to take their meal and rest periods).

29.     Thus, the amount in controversy on this meal period claim alone exceeds $1,925,000.[3]

### Rest Periods

30.     In support of his rest period claim, Plaintiff alleges that Graybar "failed to authorize and permit Plaintiff and [putative] Class Members, or some of them, to take rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof and failed to provide compensation for such unprovided rest periods as required by California wage and hour laws. Compl., ¶ 17. Plaintiff further alleges that Graybar required Plaintiff and putative class members "to clock out for rest periods" (*id.* at ¶ 15), even though rest periods "'shall be counted as hours worked for which there shall be no deduction from wages.'" *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98, 106–107 (2017) (citation omitted).

31.     Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not provided a compliant rest period 60% of the time. *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding a 60% violation rate assumption to be reasonable where complaint is indeterminate with respect to violation rates); *see also Bryant*, 284 F. Supp. 3d at 1151–52 (finding a 60% violation rate assumption to be reasonable where complaint alleged "policy and practice" of meal period violations). However, for purposes of the instant removal, Graybar conservatively assumes only a 20% violation rate. Again, courts have widely accepted a 20% assumed violation rate for meal period claims. *E.g.*, *Salazar*, 2019 WL 2023726, at *2–3.

---

[3] 373,030 shifts collectively worked by the putative class x $25.87 average hourly base rate of pay x 0.20 (violation rate) = $1,930,057.22.

32.     Thus, the amount in controversy on this rest period claim alone exceeds $1,925,000.[4]

**<u>Wage Statement Penalties</u>**

33.     In support of his wage statement claim, Plaintiff alleges that Graybar "failed to furnish Plaintiff and Class Members, or some of them, with itemized wage statements that accurately reflect gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; the name and address of the legal entity that is the employer; and other such information as required by Labor Code section 226, subdivision (a)," and Plaintiff further alleges that Graybar "failed to furnish employees with an accurate calculation of gross and gross wages earned, as well as gross and net wages paid." Compl., ¶ 19.

34.     "Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendant[] to assume a 100% violation rate" in valuing wage statement claims. *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017); *accord Wicker v. ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021) ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

35.     The remedy for an alleged violation of Labor Code section 226(a) is found in section 226(e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four

---

[4] 373,030 shifts collectively worked by the putative class x $25.87 average hourly base rate of pay x 0.20 (violation rate) = $1,930,057.22.

thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

36. The amount in controversy on this claim alone, assuming a 100% violation rate, exceeds $550,000, and that is assuming the lower $50 penalty applies instead of the $100 penalty that would be available for the "subsequent" alleged violations.[5]

### Penalties for Untimely Payment of Wages During Employment

37. Plaintiff alleges that "in the one (1) year before the filing of the Complaint in this Action through the present," Graybar "employed policies and practices that resulted in, at times, not paying Plaintiff and [putative] Class Members in accordance with Labor Code section 204." Compl., ¶ 85. For these alleged violations, Plaintiff seeks relief under section 210. *Id.*, ¶ 86. Section 210(a) provides the following remedies:

> 1. For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> 2. For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

38. Plaintiff's allegations reflect that the heightened penalty applies. Compl., ¶¶ 41, 54, 62 (alleging a willful failure to pay wages, including meal and rest period premiums).

39. Because the remedy found in Labor Code section 210 is a penalty, there is a one-year statute of limitations. Lab. Code § 340(a). During the relevant time period since March 21, 2023, there were 11,384 pay periods collectively worked by the putative class. Lamkey decl., ¶ 4(f).

40. Because Plaintiff's section 204 claim is derivative of his claims for failing to timely pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due (Compl., ¶ 81), it is reasonable to assume a 100% violation rate for his section 204 claim. *See Wicker*, 2021 WL 1187271, at *4 ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then

---

[5] 11,384 wage statements x $50 penalty allegedly noncompliant wage statement x 1.0 (i.e., 100% violation rate) = $569,200.

11
DEFENDANT GRAYBAR ELECTRIC COMPANY, INC.'S NOTICE OF REMOVAL

FIRM:64409376v2

Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

41.  Thus, Plaintiff has placed more than $2,250,000 in controversy in connection with his section 204 claim.[6]

**Waiting Time Penalties for Untimely Payment of Wages at Employment End**

42.  Plaintiff alleges that Graybar failed to pay "Plaintiff and [putative] Class Members all wages earned prior to termination or resignation in accordance with Labor Code sections 201 and 202 was willful," and he further alleges that Graybar "had the ability to pay all wages earned by Plaintiff and Class Members at the time of termination in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, at times, to pay all wages earned prior to termination or resignation.  Compl., ¶ 69; *accord id.* at ¶ 68.

43.  "For at least four (4) years prior to the filing of this action and continuing to the present," Plaintiff alleges that "Defendants have had a consistent policy of failing to provide Plaintiff and similarly situated employees or former employees within the State of California with compensation at their final rate of pay for unused vested paid vacation days pursuant to Labor Code section 227.3." Compl., ¶ 98.  The remedy for an alleged violation of Labor Code section 227.3 is the waiting time penalty under section 203.

44.  Because Plaintiff's claim for waiting time penalties is derivative of his claims for failing to pay all overtime, minimum wages, meal period premiums, rest period premiums, and vacation wages he contends were due (Compl., ¶ 18), it is reasonable to assume a 100% violation rate for his section 203 claim.  That is, "because it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence." *Wicker*, 2021 WL 1187271, at *4.

---

[6] 11,384 pay periods x $200 penalty per pay period x 1.0 (i.e., 20% violation rate) = $2,276,800.

12
DEFENDANT GRAYBAR ELECTRIC COMPANY, INC.'S NOTICE OF REMOVAL

FIRM:64409376v2

45.     During the relevant time period, there were 234 putative class members whose employment ended at any time since March 21, 2021. Lamkey decl., ¶ 4(g). The average daily hours worked for these former employees was 8.18 hours. Accordingly, Plaintiff has placed nearly $1,400,000 in controversy in connection with his claim for waiting time penalties.[7]

**Attorneys' Fees**

46.     Based on his claims, Plaintiff also seeks to recover attorneys' fees. Compl., ¶¶ 42, 48, 56, 64, 80, 94, 100. In *Fritsch*, the Ninth Circuit reversed the district court's remand order under CAFA because the district court erred by failing to include future attorneys' fees recoverable by statute or contract when determining whether the amount in controversy was met. 899 F.3d at 788. Because the *Fritsch* plaintiff had demanded attorneys' fees for alleged Labor Code violations under sections 218.5, 226 and 1194, the Ninth Circuit held that, "Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Id.* at 794. Like the plaintiff in *Fritsch*, Plaintiff here demands attorneys' fees pursuant to, *inter alia*, Labor Code sections 218.5, 1194, and 2802. Compl., ¶¶ 42, 48, 56, 64, 80, 94, 100. Attorneys' fees are thus included in the amount in controversy here. Assuming attorneys' fees of 25% (the Ninth Circuit's

---

[7] 30 days (maximum statutory penalty under Cal. Lab. Code § 203) x ($24.11 average base rate of pay x 8 hours + $36.165 (overtime rate) x 0.18 hours) x 234 former non-exempt employees = $1,399,715.69.

benchmark[8]) of the more than $7,775,000[9] in alleged damages, restitution, and penalties sought, the amount in controversy on Plaintiff's attorneys' fees would be nearly $1,950,000.[10]

### Injunctive Relief

47.  Plaintiff also seeks injunctive relief. Compl., ¶¶ 25, 104. While it is impossible to quantify the costs of compliance with any such injunction, any potential changed practice would increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes). Accordingly, factoring in the injunctive relief that Plaintiff seeks, the amount in controversy would even further exceed $5,000,000.

### Total Amount in Controversy

48.  Exclusive of expense reimbursement, interest, costs, and injunctive relief, the total amount in controversy far exceeds the jurisdictional requirement of $5,000,000 as follows:

| | |
|---|---:|
| Overtime | $2,556,939.06 |
| Minimum wage and liquidated damages | 985,744.32 |
| Meal periods | 1,930,057.22 |
| Rest periods | 1,930,057.22 |
| Wage statement penalties | 569,200 |

---

[8] The Ninth Circuit's established benchmark of 25% of damages for an award of attorneys' fees in class actions provides a reasonable basis to determine the amount of attorneys' fees that may be recovered in this case. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Rwomwijhu v. SMX, LLC*, No. CV 16-08105-AB (PJWx), 2017 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (adding 25% in attorneys' fees in determining the amount in controversy for CAFA jurisdiction).

[9] $2,556,939.06 (overtime) + $985,744.32 (minimum wage liquidated damages) + $569,200 (wage statement penalties) + $2,276,800.00 (section 210 penalties) + $1,399,715.69 (waiting time penalties) = $7,788,399.07. Notably, this total does take into account the amounts that Plaintiff has placed in controversy on his meal and rest period claims, even though he seeks attorneys fees in connection with those claims. Compl., ¶¶ 56, 64; *Fritsch*, 899 F.3d at 796. This total also does not take into account the overtime and minimum wage amounts in controversy if data going back four years – as Plaintiff seeks as a lookback period – were taken into account.

[10] $7,788,399.07 x 0.25 = $1,947,099.77.

| | |
|---|---:|
| Section 210 penalties | 2,276,800.00 |
| Waiting time penalties | 1,399,715.69 |
| Attorneys' fees | 1,947,099.77 |
| **Total:** | **$13,595,613.28** |

Again, this total also does not take into account the overtime, minimum wage, and attorneys' fees amounts in controversy if data going back four years – as Plaintiff seeks as a lookback period – were taken into account. Nor does this total does not include any amounts for Plaintiff's expense reimbursement claim or his requests for interest, costs, or injunctive relief. Nor does this total include any post-removal amounts (other than attorneys' fees). Of course, calculating those claims would push the amount in controversy further above the $5,000,000 threshold. If challenged to do so by Plaintiff or this Court, Graybar can and will present any additional evidence to establish by a preponderance of evidence that Plaintiff's claims exceed the jurisdictional minimum of $5,000,000.00. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (explaining that a removing defendant need only present a short and plain statement of the grounds for federal jurisdiction in its removal papers and need not present evidence to establish the amount in controversy until challenged to do so).

### III.     TIMELINESS OF REMOVAL

49.     This notice of removal is being timely filed within 30 days of April 2, 2024, the date on which the summons and complaint were served upon Graybar.

DATED: May 1, 2024                                       EPSTEIN BECKER & GREEN, P.C.

                                                By:     */s/ Kevin D. Sullivan*
                                                        Kevin D. Sullivan

                                                        Attorneys for Defendant
                                                        GRAYBAR ELECTRIC COMPANY, INC.