**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN SOTO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GRAYBAR ELECTRIC COMPANY, INC., a New York corporation; ERNESTO ACOSTA, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:24-cv-00520-JLT-SKO<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 6) |

John Soto alleges that Graybar Electric Company, Inc. violated the Unfair Competition Law and several provisions of the California Labor Code, including provisions related to meal and rest breaks, minimum and overtime pay, and timely payment of wages upon termination. (Doc. 1-1 at ¶¶ 36–105.) Plaintiff filed this action in Fresno County Superior Court on behalf of himself and similarly situated employees in California. Defendants removed the suit to this Court under the Class Action Fairness Act of 2005 (CAFA). (Doc. 1.) Plaintiff seeks to remand this action, claiming that the amount-in-controversy requirements under CAFA is not satisfied. (Doc. 6.) Defendants maintain that this Court has jurisdiction under CAFA. (Doc. 13.) For the reasons set forth below, Plaintiff's Motion to Remand is **DENIED**.

**I.   INTRODUCTION**

**A. Background**

Plaintiff has been employed by Defendant as an hourly employee since March 2018. (Doc. 1-1 at ¶ 2.) Plaintiff's Complaint alleges that Defendant (1) failed to pay overtime wages;

1

(2) failed to pay minimum wages for all hours worked; (3) failed to provide meal breaks; (4) failed to provide rest breaks; (5) failed to timely pay the wages of discharged employees upon separation; (6) failed to provide accurate wage statements; (7) failed to timely pay wages during employment; (8) failed to indemnify Plaintiff for all necessary expenses incurred but paid for by him; (9) failed to pay unused but vested vacation days; and (10) violated Cal. Bus. & Prof. Code §§ 17200, *et seq* due to Defendant's failure to provide him with his rights under the California Healthy Workplace Healthy Family Act of 2014.  (Doc. 1-1 at ¶¶ 36–105.)  Plaintiff seeks to represent a class comprised of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')."  (*Id.* at ¶ 26.)

### B. Procedural History

Plaintiff filed this class action against Graybar Electric Company, Inc. and Ernesto Acosta in Fresno County Superior Court on March 21, 2024.  (Doc. 1-1 at 1.)  Defendants then removed the instant action to this Court pursuant to the Class Action Fairness Act.  (Doc. 1.)  Defendants assert that the parties are diverse, as Plaintiff is a resident of California and Defendant Graybar is a New York corporation with its principal place of business in Missouri.  (*Id.* at ¶ 13.) Plaintiff seeks to have the case remanded to state court because Defendant failed to submit competent evidence to support amount-in-controversy.  (Doc. 6.)[1]

## II.   LEGAL STANDARD

### A. CAFA

Under the Class Action Fairness Act of 2005, federal courts have original jurisdiction "over certain class actions, defined in 28 U.S.C. § 1332(d)(1), the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  "Congress enacted CAFA to 'curb

---

[1] By and large, the parties' briefs only refer to "Defendant" Graybar, rather than "Defendants" Graybar and Acosta. Hereinafter, the Court also adopts such convention for purposes of the discussing the instant Motion.

perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted). A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal . . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "'[When] a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' '[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87–89; *Ibarra*, 775 F.3d at 1197); *see also* 28 U.S.C. § 1446(c)(2) (with certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). When a removing defendant shows recovery that could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020).

1  Nonetheless, the removing party bears the ultimate burden of showing "by a preponderance of the
2  evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is
3  challenged." *Ibarra*, 775 F.3d at 1197.  This burden may be satisfied by submitting "affidavits or
4  declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at
5  the time of removal,'" or by relying on reasonable assumptions.  *Id.*; *LaCross v. Knight Transp.*
6  *Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may
7  be reasonable if it is founded on the allegations of the complaint.").  Removal is proper "if the
8  district court finds, by a preponderance of the evidence, that the amount in controversy exceeds
9  the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

10  The amount in controversy is *not* the amount of damages that the plaintiff will likely
11  recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a
12  prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395,
13  401 (9th Cir. 2010).  Rather, it "is simply an estimate of the total amount in dispute." *Id.*  Thus,
14  the amount on controversy merely "reflects the maximum recovery the plaintiff could reasonably
15  recover." *Arias*, 936 F.3d at 927.  To determine the amount in controversy for CAFA purposes,
16  the claims of individual members in a putative class are aggregated.  28 U.S.C. § 1332(d)(6); *see*
17  *also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

### III.   DISCUSSION

19  As mentioned above, federal courts have original jurisdiction under CAFC over any class
20  action where the putative class "[(1)] has more than 100 members, [(2)] the parties are minimally
21  diverse, and [(3)] the amount in controversy exceeds $5 million." *Dart Cherokee*, 574 U.S. at
22  84–85. The parties do not dispute the first and second elements. Rather, the parties' dispute
23  centers around whether the amount in controversy exceeds $5 million.

**A. Judicial Notice**

25  Graybar asks this Court to take judicial notice of a complaint that Plaintiff had filed in a
26  parallel PAGA action. (Doc. 13-1; *see also* Doc. 13 at 18.)  In *Turner v. Northrop Grumman*
27  *Corp.*, No. CV 23-3756 PA (PDx), 2023 WL 4560998, at *2 (C.D. Cal. July 17, 2023) (in
28  chambers), where the defendants asked the district court to take judicial notice of a parallel

4

PAGA action filed by the same plaintiff that raised substantially similar issues. The court granted the request, in part because the PAGA notice was referenced in the complaint and in part because the plaintiff did not object to the defendants' request. *Id*.

In *Luna v. Pronto California Gen. Agency, LLC*, the district court denied the defendants' request to take judicial notice of the plaintiff's PAGA complaint because "it [wa]s not relevant to the instant Motion." No. 2:20-cv-05223-RGK-KS, 2020 WL 4883879, at *4 (C.D. Cal. Aug. 19, 2020) (in chambers). The district court reasoned:

> The PAGA Complaint was not filed until after Defendants removed this case from federal court. When assessing the amount in controversy, the court "considers allegations in the removal petition, as well as 'summary-judgment-type evidence relevant to the amount in controversy **at the time of removal**.'" Because the PAGA Complaint was filed after Defendants removed the case, it was not relevant to the amount in controversy at the time of removal. Furthermore, the PAGA Complaint was filed in a different court, on behalf of a different real party in interest, seeking different relief. Thus, its allegations are not relevant to the matter at hand and the Court declines to take judicial notice of the PAGA Complaint.

*Id*. (internal citation omitted) (emphasis in original).

Plaintiff's PAGA action was neither referenced in the instant Complaint nor filed before the instant action was removed to this Court. As such, *Turner*'s reasonings apply. Thus, the Court **DENIES** Defendant's request for judicial notice.

**B. Overtime Claim**

California Labor Code § 510 requires employers to pay employees who work more than eight hours in a day or forty hours in a week at a rate of no less than one and a half times the regular rate of pay for an employee. *See* Cal. Lab. Code § 510(a); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (Cal. 2011) ("For these reasons, we answer the first of the certified questions as follows: The California Labor Code does apply to overtime work performed in California for a California-based employer by out-of-state plaintiffs in the circumstances of this case, such that overtime pay is required for work in excess of eight hours per day *or* in excess of forty hours per week." (citation omitted) (emphasis added)); *Angeles v. US Airways, Inc.*, 790 F. App'x 878, 879 (9th Cir. 2020) (Mem.) ("Section 510 requires employers to compensate work at a rate of at least one and one-half times regular pay for any hours worked that exceed eight hours per day or forty

hours per week.").

Defendant calculated the unpaid overtime as follows: [all those employed by Defendant during the relevant time period have collectively worked 274,393 shifts that are longer than eight hours] X [assuming 1 hour of unpaid overtime every five shifts—i.e., a 20% violation rate, wherein each violation involves 1 hour of unpaid overtime)] X [$25.87/hour average base pay] X [1.5 overtime multiplier] = $ 2,129,564.07.  (Doc. 13 at 24 n.13.)

### 1. Violation Rate

Recently, in *Perez*, the Ninth Circuit addressed the question of how to estimate the potential violation rate in a CAFA-based wages and hours case.  There, the complaint alleged that the defendant committed wage and hour violations "at times," without further quantifying a violation rate: *Perez v. Rose Hills Co.*, No. 2:24-cv-04827-JLS-PVC, 2025 WL 2631603, at *3–5 (C.D. Cal. Aug. 29, 2025) (citations to the record omitted).

Based on these allegations, the defendant in *Perez* "assumed that, every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break." *Perez v. Rose Hill Co.*, 131 F.4th 804, 806–07 (9th Cir. 2025).  The district court determined that the defendant failed to provide an adequate basis for the defendant's assumptions regarding the violation rate and concluded that the amount in controversy requirement was not met.  *Id.*  The Ninth Circuit disagreed:

> It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that [the defendant] assumed. But that does not automatically render the rate assumed by [the defendant] unreasonable. And if [the plaintiff] believed that some other assumption would have been more reasonable, she was free to propose that rate. (She was also free to use some more specific phrase than "at times" when drafting the complaint; had she done so, she could have constrained the range of assumptions that [the defendant] could reasonably adopt.) The district court could then have weighed the evidence and arguments in deciding which assumption was more appropriate.

*Id.* at 810. The Ninth Circuit remanded the case to the district court for further proceedings.  *Id.*

On remand, the district court rejected the plaintiff's argument "that at times could also mean once per month, or once per quarter[,]" explaining, as the Ninth Circuit did, that just

6

1   because "the phrase at times could support a lower violation rate as easily as it could support the
2   [one-hour-per-week] violation rate that [the defendant] assumed . . . [it] does not automatically
3   render the rate assumed by [the defendant] unreasonable." *Perez v. Rose Hills Co.*, No. 2:24-cv-
4   04827-JLS-PVC, 2025 WL 2631603, at *4 (citation and quotation marks omitted)).  As *Perez*
5   instructs, vague terms may be susceptible to a flexible, broad range of interpretations; and
6   Plaintiff, as the master of the Complaint, cannot avoid the consequences that flow from his
7   deliberate use of vague description of the frequency of purported violations.  It would be unfair to
8   Defendant to let him do so.

9   Further, in *Jennings*, the district court found, that it was reasonable to assume a 25%
10  violation based on "at times" allegations when the defendant has offered "declarations
11  provid[ing] the (1) number of class members during the relevant period; (2) average hourly wage
12  rates; (3) number of shifts averaging either five or eight hours per day; (4) and number of pay
13  periods." *See Jennings v. Northrop Grumman Corp.*, No. CV 24-7212 FMO (Ex), 2025 WL
14  1940576, at *4 & n.3 (C.D. Cal. July 14, 2025).

15  Here, the Complaint uses substantially similar language as in *Perez*. Plaintiff alleges that
16  "[f]our (4) years prior to the filing of the Complaint in this Action through the present, Plaintiff
17  and Class Members, at times, worked for Defendant[] during shifts that consisted of more than
18  eight (8) hours in a workday . . . without being paid overtime wages for all hours worked as a
19  result of[]" Defendant's various failures.  (*See* Doc. 1-1 at ¶ 40.)  Plaintiff also alleges that, "by
20  requiring Plaintiff and Class Members to, at times, work greater than eight (8) hours per
21  workday[] . . . without properly compensating overtime wages at the proper overtime rate of pay,
22  Defendant[], on occasion, willfully violated the provisions of the Labor Code, among others,
23  sections 510, 1194, and applicable IWC Wage Orders, and California law."  (*Id*. at ¶ 41.)

24  Thus, like in *Perez*, the instant Complaint is replete with vague terms like "on occasion"
25  and "at times."  (*See* Doc. 6 at 14 (enumerating instances where the Complaint specifies that
26  Labor Code violations occurred "at times").) Much like *Jennings*, Defendant has proffered a
27  declaration providing "the (1) number of class members during the relevant period; (2) average
28  hourly wage rates; (3) number of shifts averaging either five or eight hours per day; (4) and

7

1   number of pay periods." 2025 WL 1940576, at *4 & n.3.  As such, the Court concludes that
2   Defendant has properly and reasonably assumed a 20% violation rate.  Plaintiff objects to
3   Defendant's 20% violation rate on two grounds, neither of which the Court finds persuasive.
4         Plaintiff first argues that "[i]t would be just as consistent with the complaint to assume a
5   frequency of once per-month, or possibly once-per-quarter," and that Defendant "cannot establish
6   CAFA jurisdiction merely by plucking a violation out of the air and calling it reasonable." (Doc.
7   6 at 15–16; *see also id*. at 16 (arguing that Defendant's choice as to the violation rate is arbitrary
8   and unreliable because it can be easily manipulated to produce an amount in controversy that is
9   greater than $5 million).) Such argument was considered and rejected by *Perez*. 2025 WL
10  2631603, at *2. As the Ninth Circuit explained, "the phrase 'at times' could support a lower
11  violation rate as easily as it could support the [20%] violation rate that [Defendant] assumed."
12  *Perez*, 131 F.4th at 810.  That does not render unreasonable Defendant's proposed violation rates.
13  *Id*.
14        Instead, if Plaintiff "believe[s] that some other assumption would have been more
15  reasonable, []he [i]s free to propose that rate." *Id*.  Plaintiff has not done so, choosing only to
16  attack Defendant's methodology as unfounded (*see* Doc. 6 at 15–16; Doc. 14 at 4–5). *Carroll v.*
17  *Ameri-Force Craft Servs., Inc.*, No. 24-cv-1443-RSH-DTF, 2025 WL 2621704, at *4–5 (S.D.
18  Cal. Sept. 11, 2025); *see also Martin v. United Rentals (N. Am.), Inc.*, No. 3:25-cv-02041-JSC,
19  2025 WL 1554333, at *3 (N.D. Cal. June 2, 2025) ("When challenging a defendant's assumption,
20  an opposing party may not merely state the assumption is unreasonable; instead, the opposing
21  party should posit an alternative assumption 'grounded in real evidence, such as an affidavit [by
22  an aggrieved party].'" (quoting *Ibarra*, 775 F.3d at 1199) (alteration in original)); *Jauregui v.*
23  *Roadrunner Transp. Servs.*, Inc., 28 F.4th 989, 996 (9th Cir. 2022) (noting that "often . . . the
24  *reason* a defendant's assumption is rejected is because a different, better assumption is identified
25  [by the plaintiff]" (emphasis in original)). *Perez* demonstrates that "at times" is not inconsistent
26  with a 20% violation rate, even when unaccompanied by allegations of "policy or practice." *See,*
27  *e.g.*, *Peraino v. DNC Parks & Resorts at Tenaya, Inc.*, No. 25-cv-1130-JES-DEB, 2025 WL
28  3022750, at *4–6 (S.D. Cal. Oct. 29, 2025) ("at times"); *Santos v. Pictsweet Co.*, No. 2:25-cv-

03181-AB-SSC, 2025 WL 2424357, at *5 (C.D. Cal. Aug. 20, 2025) ("at times").

Second, Plaintiff points to older precedents from this Court and argues that "[t]his Court has specifically and repeatedly deemed an assumed rate of one meal and rest period violation per workweek 'too speculative when unsupported by any evidence.'" (Doc. 6 at 16 (collecting cases).) Such argument, however, was rejected in *Perez*:

> The key to our holding in *Ibarra* was that the defendant had to submit evidence of the violation rate because its interpretation of the allegations in the complaint was *unreasonable*. Our decision suggests only that if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else. We did not hold that violation rates drawn from reasonable interpretations of the complaint must independently be supported by competent evidence.

*Perez*, 131 F.4th at 809 (emphasis in original). Because the Court has already determined above that a 20% violation rate is grounded in a reasonable interpretation of terms like "at times," Defendant need not produce further evidence supporting its assumption of a 20% violation rate.[2]

In sum, considering that "[t]he Court is . . . left to assess [Defendant's] interpretation of a vague complaint without the benefit of a competing factual or evidentiary framework[,] . . . the Court finds that the [20%] violation-rate assumptions [Defendant] uses to calculate the amount in controversy are based on a reasonable interpretation of the complaint." *Perez*, 2025 WL 2631603, at *6. Though it is possible that Defendant's numbers may be too high or too low, "they are not unreasonable given the vague allegations of the complaint and the lack of an alternative analysis from [Plaintiff]." *Id.* at *5 (citing *Jauregui*, 28 F.4th at 996). Accordingly, the Court finds adequate support in the Complaint for Defendant's use of a 20% violation rate.

2. Evidentiary Burdens

Plaintiff asserts that the evidence provided by Defendant falls short of the summary judgment-type evidence that is required to support their calculations of the amount in controversy, as Defendant "failed to provide any factual underpinning for its calculations" and failed to provide corroborating evidence for Ms. Lamkey's declaration, (Doc. 6 at 11–14; Doc. 14

---

[2] Indeed, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Perez*, 131 F.4th at 808 (emphasis in original).

9

at 2), which sets forth important data such as number of shifts and average hourly pay, (*see generally* Doc. 13-1). In response, Defendant argues that Plaintiff overlies on older and "non-binding decisions that purported to place high standards on the types of evidence" that Defendant has "to present in the CAFA removal context." (Doc. 13 at 17.) The Court agrees that more recent Ninth Circuit decisions have expressly rejected Plaintiff's position and, instead, held that a declaration may be sufficient evidence to support removal, without additional evidentiary submissions.

In *Salter*, for instance, the plaintiff filed a putative class action for wage and labor violations, which the defendant removed to federal court under CAFA. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 961 (9th Cir. 2020). The defendant supported its notice of removal with a declaration from Cliff Dixon, its Chief Information Officer, who did not "attach a single business record, spreadsheet, or other supporting document to his declaration to corroborate his testimony." *Salter v. Quality Carriers, Inc.*, 2020 WL 1182581, at *2 (C.D. Cal. Mar. 20, 2020). The district court found that the defendant "failed to provide the necessary foundation for its calculations and, thus, have failed to put forth summary-judgment-type evidence necessary to demonstrate its amount in controversy calculations." *Id.* On appeal, the Ninth Circuit observed:

> According to [the plaintiff], [the defendant] failed to meet this [removal burden] by offering only a short declaration by one of its employees and not providing a single business record to support that declaration. He contends that the district court properly rejected the declaration because evidence submitted at summary judgment must satisfy the "best evidence rule," which requires that a party provide "the original of a writing, recording, or photograph" to "prove the contents thereof." [The plaintiff] argues that because the best evidence rule applies whenever the contents of a document are sought to be proved, a declarant may not simply testify to the contents of a document, he must actually produce the document for it to be considered.

*Salter*, 974 F.3d at 963–64. The Ninth Circuit noted that the plaintiff did not offer any of his own evidence or challenge the rationality of the information and "argued only that [the defendant] 'must support its assertion with competent proof.'" *Id.* The Ninth Circuit explained that "such a challenge is foreclosed by the Supreme Court's decision in *Dart* and [the Ninth Circuit's] opinion in *Arias*." *Id.* Rather, Defendant is "permitted to rely on a declaration from an individual who

10

1  has reviewed relevant employee payroll and wage data," but without sharing the underlying data,
2  *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir. Dec. 27, 2023)
3  (Mem.) (citations omitted), so long as Plaintiff is "not really challeng[ing] the [substantive] truth"
4  of the declaration, *see Salter*, 974 F.3d at 963–65.

Here, Ms. Lemkey reports that she has "access to," and is "familiar with, the employment history, time records, and payroll history of the proposed class members." (Doc. 13-1 at ¶ 2.) She also indicates the information provided in her declaration is based upon information from Defendant's human resources and payroll systems. (*Id*. at ¶ 3.) Much like *Salter*, Plaintiff contends that Ms. Lemkey's declaration is filled with "unsupported" and "unexplained" data, not that Ms. Lemkey's numbers are substantively incorrect; Plaintiff has not presented any evidence challenging the substantive accuracy of the information from Ms. Lemkey. (*See* Doc. 6 at 11–14, 20.) Therefore, contrary to Plaintiff's assertion, Ms. Lemkey is not required to attach additional documents to support her declaration. *See Salter*, 974 F.3d at 963–65; *Avila v. Rue21, Inc*., 432 F. Supp. 3d 1175, 1186–87 (E.D. Cal. 2020) (rejecting the plaintiff's argument that a declaration is "*per se* insufficient because it lacks foundation and corroborating documents such as payroll records"). Accordingly, the Court rejects all evidentiary objections raised by Plaintiff. (*See, e.g.*, Doc. 6 at 11–14, 20.)

### 3. Final Calculation

Finally, the Court notes that it is not reasonable for Defendant to assume one hour of overtime per shift, paid or unpaid, when it is known that the average shift duration is 8.23 hours. Rather, a better way to calculate the amount in controversy with respect to the overtime claim[3] is to start with the fact that Class Members have, collectively, worked 373,030 shifts from March 21, 2020 to April 26, 2024, with an average duration of 8.23 hours per shift. (*See* Doc. 13-1 at ¶ 4(c, d).) Next, the Court applies the assumption that 20% of all overtime worked were not properly paid. Therefore, the amount in controversy with respect to the overtime claim is:

---

[3] This Court cannot simply apply $0 to a claim if it identifies a more reasonable assumption or calculation. *Jauregui*, 28 F.4th at 994 ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.")

11

1  [373,030 shifts] X [on average, 0.23 hours of overtime per shift] X [assuming 20% of which were

2  unpaid] X [$25.87/hour base pay] X [1.5 overtime multiplier] = $665,869.74.

3  **C. Minimum Wage Claim**

4  Section 1194 provides that "any employee receiving less than the legal minimum wage or

5  the legal overtime compensation applicable to the employee is entitled to recover in a civil action

6  the unpaid balance of the full amount of this minimum wage or overtime compensation, including

7  interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194.

8  Furthermore, on unpaid minimum wage claims, "an employee shall be entitled to recover

9  liquidated damages in an amount equal to the [minimum] wages unlawfully unpaid and interest

10 thereon." *Id.* § 1194.2. Thus, damages for an unpaid minimum wage claim "would be

11 California's minimum wage multiplied by the number of unpaid hours worked, and then doubled

12 to include liquidated damages." *Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL

13 327451, at *4 (N.D. Cal. Jan. 9, 2018).

14 Defendant determined that Class Members have worked 373,030 shifts from March 21,

15 2020 to April 26, 2024 with an average duration of 8.23 hours per shift; and that they have

16 worked 375,163 shifts that are longer than 3.5 hours from March 21, 2020 to May 1, 2024. (Doc.

17 13-1 at ¶ 4(c, d, f).) Defendant then assumed that Class Members were not paid an hour of

18 minimum wage work once every five shift and that they may be entitled to liquidated damages.

19 (Doc. 13 at 23 n.12.) As such, Defendant calculated the amount in controversy with respect to the

20 minimum wage claim as follows: [Class Members worked 3.5 hours or more in 375,163 shifts

21 from March 21, 2020 to May 1, 2024][4] X [assuming that 1 hour was not properly paid for every 5

22 shifts, equivalent to a 20% violation rate] X [$14.57/hour weighted average minimum wage] X

23 [2.0 liquidated damages] = $2,186,449.96.

24 For substantially the same reasons as discussed in Part III.B.1 above, the Court finds that

25 Defendant reasonably assumed a 20% violation rate, notwithstanding the fact that the Complaint

26 merely alleges that the minimum wage claims occurred "at times." (Doc. 6 at 14.) As such, the

27

28 [4] Considering that the average duration for *all* shifts is 8.23 hours, the Court finds it reasonable to rely on the number of shifts longer than 3.5 hours.

12

1    Court accepts Defendant's calculation with respect to the minimum wage claim.[5]

2    **D. Meal and Rest Break Claims**

3    Under California Labor Code §§ 226.7 and 516, employers must provide non-exempt
4    employees working more than five hours in a shift with at least one uninterrupted meal break of at
5    least 30 minutes. Employees working more than ten hours per day must be given a second thirty-
6    minute meal period, unless they are working fewer than twelve hours, in which case the second
7    meal period can likewise be waived. Employees are entitled to one additional hour at their
8    regular pay rate for each workday in which a compliant meal period was not provided. Cal. Lab.
9    Code § 226.7(b). In addition, employers must provide non-exempt employees with at least one
10   ten-minute rest period for every four hours worked. Failure to provide the rest periods results in a
11   penalty of "one additional hour of pay at the employee's regular rate of compensation for each
12   workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

13   Declaration from Ms. Lamkey states that Class Members worked, from March 21, 2020 to
14   May 1, 2024, 375,163 shifts that were longer 3.5 hours. (Doc. 13-1 at ¶ 4(f).) Defendant then
15   assumed that Class Members were not given their rest breaks in 20% of those shifts, even though
16   they may have been entitled to one. (Doc. 13 at 21 n.9.) The amount in controversy is therefore:
17   [375,163 shifts where Class Members were entitled to a rest break] X [assuming that Defendant
18   failed to provide rest breaks in 20% of those shifts] X [$25.87/hour average wage] =
19   $1,941,093.36 with respect to Plaintiff's rest break claim.[6] (*Id*.)

20   Ms. Lamkey similarly found that Class Members had worked 274,393 shifts with more
21   than 8 hours recorded, (Doc. 13-1 at ¶ 4(e)); as Defendant recognizes, "there can be no dispute"

---

[5] Defendant is correct that both minimum wage and overtime claims may be considered when calculating the total amount in controversy. (Doc. 13 at 22). Indeed, district courts within the Ninth Circuit have repeatedly held that it is reasonable to assume Plaintiff is alleging different instances of unpaid time for the two claims where, as here, the Complaint includes a distinct reason for unpaid overtime compensation (e.g., failure to account for incentives) and does not specify the nature of the unpaid work. *See, e.g., Rapisura v. BMW of N. Am., Ltd. Liab. Co.*, No. 2:22-cv-00455 WBS AC, 2022 WL 1557001, at *3 (E.D. Cal. May 17, 2022) (rejecting a double-counting argument because plaintiff alleged "separate claims for minimum wages and overtime wages and state[d] different theories for these claims").

[6] It is reasonable for Defendant to calculate the amount in controversy based on the number of shifts rather than the number of workweeks. *See Martinez v. Cencora, Inc.*, No. 24-cv-02663-MRA-SHK, 2025 WL 1443021, at *3 (C.D. Cal. May 20, 2025) (finding it reasonable for defendant to use all shifts lasting longer than five hours throughout the class period in calculating the meal period amount in controversy).

that workers are entitled to at least one meal break during such shifts, (Doc. 13 at 20). Next, Defendant assumed that Class Members were not given their meal breaks 20% of times, even when they may have been entitled to one. (*Id.*) The amount in controversy is therefore: [274,393 shifts where Class Members were entitled to a meal break] X [assuming that Defendant failed to provide meal breaks in 20% of those shifts] X [$25.87/hour average wage] = $1,419,709.38 with respect to Plaintiff's meal break claim. (*Id.* at 20 n.6.)

Plaintiff once again objects to Defendant's use of a 20% violation rate—in particular, Plaintiff argues that Defendant provided no support for the 20% violation rate other than describing it as reasonable. (Doc. 6 at 15.) However, for substantially the same reasons articulated in Part III.B.1 above, the Court finds that Defendant reasonably assumed a 20% violation rate considering the allegation that this conduct occurred "at times." Accordingly, the Court adopts Defendant's calculation as to the meal and rest break claims.

**E. Waiting Time Penalties**

Under California Labor Code §§ 201(a) and 202(a), discharged employees are generally entitled to receive all wages owed immediately on termination, while resigned employees generally receive payment within 72 hours. If an employer fails to timely pay wages due upon termination, then the aggrieved employee is entitled to waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

Plaintiff asserts "that in the three (3) years before the filing of the Complaint in this Action through the present, Defendant[], due to the failure, at times, to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." (Doc. 1-1 at ¶ 68.)

Defendant has identified 234 putative class members that were separated from Defendant's employ between March 21, 2021 to April 26, 2024, with an average wage of $24.11/hour. (Doc. 13-1 at ¶ 4(i).) Next, Defendant determined that the average wage per day per separated employee is [$24.11/hour average base pay for terminated employees X 8 hours/day] + [0.18 hours of average over time X $24.11/hour average base pay X 1.5 overtime

1   multiplier] = $199.39/day.  (Doc. 13 at 27 n.15.)  Finally, Defendant calculated that the total

2   waiting time penalty is [234 terminated Class Members] X [30 days] X [$199.39/day average pay

3   for severed employees] X [100% violation rate] = $1,399,715.69.  (Doc. 13 at 27 n.15.)  Plaintiff

4   raises two main objections in response to Defendant's calculation.

5         In *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, a plaintiff brought her wage and hour

6   claims—including meal and rest break violations, overtime wages, minimum wages, and waiting

7   time penalties—on behalf of a class including "*all* current and former non-exempt employees of

8   Defendants within the State of California at any time commencing four (4) years preceding the

9   filing of [her] complaint up until the time that notice of the class action is provided to the class."

10  No. 2:23-cv-02802-MCS-JC, 2023 WL 524626, at *4 (C.D. Cal. Aug. 14, 2023) (emphasis in

11  original).  The court reasoned that a "former employee need only suffer *one* of the alleged

12  violations *at any time* during employment to bring a claim for failure to timely [pay] wages upon

13  termination." *Id.* at *4 (emphases added).  As such, the court found it "reasonable to assume that

14  . . . 100% of former employees suffered derivative waiting time violations." *Id.* (citation

15  omitted).  Here, too, Plaintiff tethered his waiting time penalties to multiple claims of Labor Code

16  violations for which the Court has found a 20% violation rate to be reasonable. As a result, any

17  terminated employee need only suffer a single violation—whether meal break, rest break,

18  overtime wages, *or* minimum wages—to be entitled to the waiting time penalties, thereby

19  justifying a 100% violation rate. *See id*.

20        Next, the Court finds it is reasonable to assume that all putative Class Members are

21  entitled to the maximum amount (30 days) of statutory penalties. First, the number of employees

22  separated from Defendant less than 30 days before Plaintiff filed her complaint is, presumably,

23  negligible in relation to the total number of employees separated from Defendant over the span of

24  four years before Plaintiff filed her complaint.  Second, "there is nothing in the [c]omplaint to

25  suggest that violations, once they happened, were ever remedied." *See Chan v. Panera, LLC*, No.

26  23-cv-04194-JLS-AFM, 2023 WL 6367677, at *4 (C.D. Cal. Sept. 28, 2023).  Third, it would be

27  unreasonable to use an amount less than the 30-day maximum when, as here, the Complaint, (*see*

28  Doc. 1-1 at ¶ 70), explicitly seeks statutory penalties up to a maximum of thirty days, *Ortiz v.*

1  *Sheraton Op. LLC*, No. 24-cv-05104-JAK-JPR, 2024 WL 4625951, at *8 (C.D. Cal. Oct. 30,
2  2024) ("[U]sing an amount less than the 30-day penalty maximum is unreasonable. The
3  Complaint itself seeks penalties 'up to a maximum of thirty (30) days.'"). Put differently,
4  because Plaintiff is seeking the maximum wait time penalty, he is foreclosed from arguing that
5  the maximum penalty is not part of the total amount in dispute.

6  Plaintiff points to *Barajas* for the proposition that the "up to" 30 days language does not
7  make it reasonable for Defendant to "assum[e] 30[]days' worth of penalties." (Doc. 6 at 21.) The
8  *Barajas* court, however, said no such thing. Rather, *Barajas* merely noted that the "up to" 30 days
9  language at issue, in and of itself, was insufficient to sustain an assumption of a 100% violation
10 rate. *Barajas v. CPC Logistics Sols., LLC*, No. 22-cv-03911-WHO, 2022 WL 4397723, at *4
11 (N.D. Cal. Sept. 23, 2022) ("The fact that plaintiff's complaint seeks 'up to' the full 30-day
12 maximum period does not by itself justify a 100% violation rate. (citations omitted)). *Barajas* did
13 not suggest that it may be unreasonable to apply an appropriate violation rate to 30 days' worth of
14 penalties. For these reasons, the Court adopts Defendant's calculation for the potential waiting
15 time penalties.

16 **F.  Equitable Jurisdiction over the UCL Claim**

17 The Court finds it necessary to briefly discuss and explain the difference between "subject
18 matter jurisdiction" and "equitable jurisdiction." Subject matter jurisdiction refers to this Court's
19 power, conferred by Congress, to hear a claim. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308,
20 1314 (9th Cir. 2022). Lack of subject matter jurisdiction cannot be waived by the parties and can
21 be raised at any point during the litigation, even by the Court. In contrast, "equitable jurisdiction
22 regards 'whether consistently with the principles governing equitable relief the court may
23 exercise its remedial powers.'" *Id.* (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 754
24 (1975)). A challenge to the existence of equitable jurisdiction, such as when a plaintiff has
25 adequate remedy at law, *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996), is typically
26 treated as a motion to dismiss for failure to state a claim upon which relief can be granted, not for
27 lack of subject matter jurisdiction, *see, e.g.*, *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761,
28 769 (N.D. Cal. 2022) (granting the defendant's motion to dismiss, inter alia, the plaintiff's unfair

1  competition and unjust enrichment claims for lack of equitable jurisdiction).

2        Plaintiff contends the Court lacks equitable jurisdiction over his claim under California's
3  Unfair Competition Law. (Doc. 6 at 23.) Plaintiff argues that this Court has no equitable
4  jurisdiction to consider his UCL claim because he "does not plead that he lacks adequate legal
5  remedy." (*Id.*)

6        While the instant Motion has been under consideration by this Court, the Ninth Circuit
7  issued its opinion in *Ruiz v. Bradford Exchange, Ltd.*, 153 F.4th 907 (9th Cir. 2025), which
8  clarified the confusion surrounding the issue of equitable jurisdiction. There, the Ninth Circuit
9  considered whether remand instead of dismissal would be appropriate in a case removed under
10 CAFA—and ultimately held that "district courts have the power to remand a removed case to
11 state court for lack of equitable jurisdiction." *Id.* at 915. The Ninth Circuit further explained that
12 "if a plaintiff files a lawsuit in state court seeking only equitable relief and the case is properly
13 removed to federal court, a defendant can defeat remand on equitable jurisdiction grounds by
14 waiving the adequate-remedy-at-law issue." *Id.* at 918. "That is especially so when, at bottom,
15 the plaintiff is seeking the same ultimate relief that would be afforded through claims at law—
16 money—but is bringing claims for equitable restitution to avoid removal." *Id*. In short, "the
17 adequate-remedy-at-law objection [i]s waivable," and "district courts have [no] independent
18 obligation to assess equitable jurisdiction." *See id*. at 916.

19       The Court recognizes that *Ruiz* is not on all fours here. The plaintiff in *Ruiz* sought only
20 equitable relief, whereas Plaintiff here is seeking both damages and equitable relief. After *Ruiz*,
21 district courts have addressed such problem in several ways—some have elected to sever and
22 remand the equitable claim, *see, e.g.*, *Avery v. TEKsystems, Inc.*, No. 22-cv-02733-JSC, 2025 WL
23 2837786 at *3 (N.D. Cal. Oct. 7, 2025) (granting the plaintiff's request to sever and remand the
24 claim when the defendant expressly declined to waive the issue of whether an adequate-remedy-
25 at-law existed, but did not argue for dismissal), some have dismissed the equitable claim without
26 prejudice, *see, e.g.*, *Loveland, v. Home Depot U.S.A., Inc.*, No. 24-cv-06142-VC, 2025 WL
27 3535047, at *2 (N.D. Cal. Dec. 10, 2025), and some have asked for supplemental briefing from
28 the defendant on the issue of waiver, *see, e.g.*, *Rodriguez v. Gen. Dynamics Info. Tech., Inc.*, No.

17

25-cv-00626-BAS-DEB, 2025 WL 3078706, at *8 (S.D. Cal. Nov. 4, 2025).

The situation here is more straightforward. In *Ruiz v. Conagra Foods Packaged Foods, LLC*, this Court addressed a substantially similar class action where the plaintiff alleged various wages and hours violations. No. 2:24-cv-02374-DAD-CSK, 2025 WL 3120555, at *1 (E.D. Cal. Nov. 7, 2025). After finding that the amount in controversy exceeded $5 million, the Court turned to the plaintiff's argument that "the [C]ourt lacks jurisdiction over plaintiff's Unfair Competition Law ('UCL') claims requesting 'restitution for unpaid wages' because plaintiff has not alleged the inadequacy of a legal remedy. Plaintiff, therefore, request[ed] that the entire action be remanded." *Id*. at *7 (citations to the record omitted). The Court noted that the issue before it was the "plaintiff's motion to remand the entirety of th[e] action to state court." *Id*. However, because the removal of an entire case may be proper so long as a district court has original jurisdiction over some of the claims, this "[C]ourt decline[d] to remand the entire action to state court." *Id*.

Here, too, Plaintiff argues that this "Court should remand ***the action*** because it does not have equitable jurisdiction over ***all*** of Plaintiff's claims for relief." (Doc. 6 at 22 (emphases added); *see also id*. at 23 ("Since the Court lacks equitable jurisdiction over Plaintiff's UCL claim, the Court can and should remand ***this case*** to state court where Plaintiff can properly seek equitable relief." (emphasis added).) But, once again, "the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002–03 (9th Cir. 2001) (citing *Kruse v. State of Hawaii*, 68 F.3d 331, 334–35 (9th Cir. 1995)). Therefore, like *Conagra Foods Packaged Foods*, this Court declines to remand the entire action to state court, as requested by Plaintiff. *See* 2025 WL 3120555, at *7. The Court further declines to consider whether it should sever and remand the UCL claim, alone, because Plaintiff has not expressly and clearly stated that it would be amenable to a partial remand of just the UCL claim.

In sum, Defendant has shown by a preponderance of the evidence that the amount in controversy is $665,869.74 for the overtime claim, $2,186,449.96 for the minimum wage claim,

$1,941,093.36 for the rest break claim, $1,419,709.38 for the meal break claim, and $1,399,715.69 for the wait time claim, for a grand total of $7,552,838.13, which is far more than the $5 million amount-in-controversy requirement under CAFA. As such, the Court need not consider Plaintiff's other claims, such as his wage statement claim. Moreover, the Court declines to remand the entire action to state court solely because of the UCL claim. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand the case state court.

### CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

(1) Defendant's Motion to judicially notice Plaintiff's PAGA complaint for the purpose of proving amount in controversy, (Doc. 13-2), is **DENIED.**

(2) Plaintiff's Motion to Remand the case to Fresno County Superior Court, (Doc. 6), is **DENIED.**

IT IS SO ORDERED.

Dated:   **December 16, 2025**

UNITED STATES DISTRICT JUDGE

19